# EXHIBIT A

**PICCUTA LAW GROUP, LLP**
Charles Tony Piccuta, Esq. (#258333)
400 West Franklin Street
Monterey, CA 93940
Telephone: (831) 920-3111
Facsimile: (831) 920-3112
charles@piccutalaw.com

Attorneys for Plaintiff
CECILIA MARTINEZ

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
2/7/2024 12:05 PM
Clerk of the Court by Deputy,
Karen Broughton

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SANTA CRUZ

| | |
|---|---|
| CECILIA MARTINEZ, | ) Case No.   24CV00381 |
| Plaintiff, | ) **COMPLAINT WITH DEMAND FOR** |
| | ) **JURY TRIAL** |
| v. | ) |
| | ) **1. Strict Product Liability (Design Defect)** |
| AMAZON.COM SERVICES, LLC, a limited | ) **2. Strict Product Liability (Manufacturing** |
| liability company, and DOES 1–10 inclusive, | ) **Defect)** |
| | ) **3. Strict Product Liability (Failure to** |
| Defendants. | ) **Warn)** |
| | ) **4. Negligence (Product Liability)** |
| | ) **5. Negligence (Failure to Warn)** |
| | ) **6. Negligence (Failure to Recall)** |
| | ) |
| | ) Judge: |
| | ) Dept.: |
| | ) |

Plaintiff, Cecilia Martinez, by counsel, alleges as follows:

### PARTIES

1.    Plaintiff Cecilia Martinez ("Plaintiff") is, and at all relevant times was, a citizen of California residing in Santa Cruz County, California.

2.    Defendant Amazon.com Services, LLC ("Amazon"), is a Delaware limited liability company with its sole member being Amazon.com Sales, Inc. Upon information and belief, Amazon.com Sales, Inc. is incorporated and organized under the laws of Delaware and maintains its principal place of business in the State of Washington.

Complaint
1

EX A

3.      At all times mentioned herein Amazon was authorized to do business in California and did so. Amazon markets, sells and distributes products worldwide, including in California. Amazon does business in California, both online and through its offices and operations in California. Amazon purposely directed its activities to customers and residents in California, including Plaintiff, and sold, distributed, advertised and marketed its products, including the one giving rise to this lawsuit, in California. Amazon's contacts with California are substantial and pervasive so that it should reasonably expect to be subject to the jurisdiction of California courts.

4.      Plaintiff is ignorant of the true names and capacities of the Doe defendants 1 through 10, who are therefore sued by such fictitious names.  Plaintiff is informed and believes that each fictitiously named defendant is legally responsible in some manner for the conduct and occurrences alleged herein and the resulting injuries and damages. The reasons that these names are not yet known, or the pertinent facts ascertainable, is because Plaintiff has not yet had an opportunity to engage in formal discovery. Upon ascertaining the true identifies of the Doe defendants and/or the additional pertinent facts, Plaintiff will amend the operative pleading or seek leave to do so as required by law.

5.      Upon information and belief, at all times mentioned herein, defendants, inclusive and each of them, including without limitation any Does, were acting in concert and participation with each other; were joint participants and collaborators in the acts complained of; were in privity with one another; and were the agents and/or employees of one another in doing the acts complained of herein, each acting within the course and scope of said agency and/or employment.

6.      Amazon and Doe defendants 1 through 10, inclusive, are collectively referred to hereinafter as "Defendants."

**JURISDICTION AND VENUE**

7.      The Court has jurisdiction over this matter because the action involves a civil dispute and the amount in controversy exceeds $35,000.

///

EX A

8.      The acts, occurrences and injury giving rise to this lawsuit occurred in the City of Watsonville, County of Santa Cruz, in the State of California, making venue proper in Santa Cruz County.

**STATEMENT OF FACTS**

9.      On or about November 13, 2020, Plaintiff did an internet search for accessories for her newly acquired 2020 Honda Civic and was directed to the website www.amazon.com.

10.     Plaintiff ultimately decided to purchase two products she saw on the website. Both products were described as "bling" car accessories. These products were adorned with decorative imitation diamonds/rhinestones.

11.     One of the products Plaintiff decided to purchase was titled "AEEIX Car Interior Bling Trim Accessories Steering Wheel Logo Sign 3D Decals Rhinestone Cover for Honda Civic Accord City Fit CR-V XR-V UR-V Odyssey Crosstour Vezel 2013-2020." (Hereinafter "product").

12.     The product was described as a "sparkly bling car steering wheel decorative diamond sticker fit for Honda, beautiful and stylish."

13.     The product consisted of four metal pieces that were covered with artificial diamonds/rhinestones. The four metal pieces were adhesive-backed and were designed to be inserted around the Honda emblem on the steering wheel of Honda vehicles. (Attached collectively as **Exhibit 1** are Amazon web pages showing the product).

14.     On November 13, 2020, Plaintiff purchased the product on www.amazon.com through a household family member with an Amazon Prime membership.

15.     On November 17, 2020, the product was delivered to Plaintiff at her residence in Watsonville, California.

16.     Upon information and belief, the product was manufactured and distributed by a company in China.

17.     Amazon used search engine optimization to direct Plaintiff to its website where the product was introduced and presented to her. Plaintiff then bought the product from Amazon through its website. Amazon took Plaintiff's order and payment. It then facilitated the

transmission of the product to Plaintiff and received compensation from the sale. Plaintiff received order confirmations and shipping information directly from Amazon. Plaintiff was directed to communicate any questions regarding the product or transaction to Amazon. Plaintiff's purchase was subject to Amazon's rules and policies of sale. Any return of the product would have been through Amazon.

18. After receiving the product, Plaintiff installed the adhesive backed pieces comprising the product around the Honda emblem of her steering wheel as intended, instructed and designed.

19. On October 15, 2023, Plaintiff was driving her 2020 Honda Civic when she was involved in a minor impact car accident. Specifically, the front of her 2020 Honda Civic came into contact with another vehicle.

20. As a result of the impact, the front driver side airbag of Plaintiff's 2020 Honda Civic deployed.

21. The deployment of her driver side air bag caused all of the adhesive backed pieces to dislodge. The pieces were projected throughout the cabin of the vehicle like shrapnel from a grenade.

22. One of the pieces went directly into Plaintiff's right eye. (Attached collectively as **Exhibit 2** are photographs of the product piece that was removed from Plaintiff's eye).

23. Plaintiff's eye was completely destroyed by the projectile. Specifically, Plaintiff suffered a completely flattened globe with a large laceration from medial to lateral equator.

24. Plaintiff is now completely blind in her right eye with no light perception. An enucleation procedure is planned for the future.

25. Prior to Plaintiff's injury and unbeknownst to Plaintiff, media outlets had reported on other individuals who had suffered injury as a result of the same product which was also purchased through Amazon. These media reports were published as early as December of 2022.

26. Despite these reports, Amazon never contacted or notified Plaintiff to warn her of the dangers associated with the product it sold her.

///

Complaint
4

EX A

27.     On November 6, 2023, the National Highway Traffic Safety Administration issued a consumer alert entitled "Don't Buy or use Steering Wheel Decorative Emblem Decals." The consumer alert stated:

"The National Highway Traffic Safety Administration warns consumers about aftermarket steering wheel decals that could potentially cause significant injury or death. At least one driver suffered a serious injury that resulted in the loss of sight in one eye, when an aftermarket emblem adorned with rhinestones became dislodged from the steering wheel in a crash and hit the driver in the face.

The product is a metal or plastic plate, usually covered with rhinestones or shiny decorations, with an adhesive back that cover the vehicle's logo in the center of the steering wheel. In a crash, the force of a deploying air bag can turn the product into a projectile, resulting in serious injury or death.

Unlike the permanently affixed logo on your vehicle's steering wheel, these aftermarket decals can easily become dislodged when the air bag is deployed. Any alterations or changes to your air bag or its cover can also cause it to not function correctly.

NHTSA is asking consumers to avoid purchasing these steering wheel decals for all vehicle makes and models. Consumers should also remove any such decals that they have already applied to their steering wheels.

28.     Amazon continued to sell these products after the National Highway Traffic Safety Administration's consumer alert.

29.     Amazon continued to sell these products after multiple serious injuries to individuals who purchased the products from Amazon.

30.     Amazon continued to sell these products after it knew, or should have known, that the products were dangerous and caused serious injuries to Amazon's customers.

31.     As of February 6, 2024, Amazon sold these products on its website www.amazon.com from which it derived a profit.

32.     Amazon presently sells these products on its website www.amazon.com.

## FIRST CAUSE OF ACTION
## STRICT PRODUCT LIABILITY (DESIGN DEFECT)

33.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 32 as though fully set forth herein.

///

EX A

34.     Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

35.     At the time that the product left the control of Defendants, it was dangerous and defective due to its design. Specifically, the product was designed to place rigid objects on the air bag compartment of the steering wheel of an automobile without permanently securing them or affixing them thereto.

36.     At all times relevant, Defendants, and each of them, knew and intended that the product would be purchased and used by members of the general public who would rely on Defendants to safely design, manufacture, market, sell and distribute the Product and to transmit any relevant warnings about the product.

37.     At the time of the incident giving rise to this Complaint, Plaintiff was using the product in the manner and fashion that Defendants, and each of them, instructed. Plaintiff's use was foreseeable by the Defendants and in a manner in which the product was intended to be used.

38.     Defendants designed the product defectively or knew its design was defective, or both, causing the product to fail to perform as safely as an ordinary consumer, including Plaintiff, would have expected it when using it in the intended and reasonably foreseeable manner. Specifically, an ordinary consumer, including Plaintiff, would not have expected that the rigid pieces would dislodge from the steering wheel sending dangerous projectiles into their face and flesh when using the product as intended and directed.

///

---

Complaint

6

EX A

39.    The risks inherent in the design and use of the product outweigh any benefits of its design.

40.    Plaintiff suffered serious injuries and damages as a legal and direct result of the aforementioned dangerous and defective product.

41.    The defective and dangerous design of the product resulted in its failure to perform safely and was a substantial factor in causing harm to Plaintiff, including the loss of her eye.

42.    At all times relevant, Defendants, and each of them, intentionally engaged in conduct which exposed the user of the product to a serious potential danger known to the Defendants which decision was based on their choice to advance their own monetary interest. As such, this conduct was an act in conscious disregard of the safety of persons such as Plaintiff, and presents the proper circumstances for the imposition of punitive and exemplary damages. Indeed, Defendants continue to manufacture, market, sell and distribute the dangerous product solely for monetary gain.

## SECOND CAUSE OF ACTION
### STRICT PRODUCT LIABILITY (MANUFACTURING DEFECT)

43.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 42 as though fully set forth herein.

44.    Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

///

Complaint

7

EX A

45.     At the time that the product left the control of Defendants, it was dangerous and defective due to a manufacturing defect. Specifically, the product was manufactured with adhesive that was not sufficient to secure the rigid pieces comprising the product to the air bag compartment of a steering wheel upon airbag deployment.

46.     At all times relevant, Defendants, and each of them, knew and intended that the product would be purchased and used by members of the general public who would rely on Defendants to safely design, manufacture, market, sell and distribute the product and to transmit any relevant warnings about the product.

47.     At the time of the incident giving rise to this Complaint, Plaintiff was using the product in the manner and fashion that Defendants, and each of them, instructed. Plaintiff's use was foreseeable by the Defendants and in a manner in which the product was intended to be used.

48.     Plaintiff suffered serious injuries and damages as a legal and direct result of the aforementioned dangerous and defective product.

49.     The defective and dangerous design of the product resulted in its failure to perform safely and was a substantial factor in causing harm to plaintiff, including the loss of her eye.

50.     At all times relevant, Defendants, and each of them, intentionally engaged in conduct which exposed the user of the product to a serious potential danger known to the Defendants which decision was based on their choice to advance their own monetary interest. As such, this conduct was an act in conscious disregard of the safety of persons such as Plaintiff, and presents the proper circumstances for the imposition of punitive and exemplary damages. Indeed, Defendants continue to manufacture, market, sell and distribute the dangerous product solely for monetary gain.

## THIRD CAUSE OF ACTION
## STRICT PRODUCT LIABILITY (FAILURE TO WARN)

51.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 50 as though fully set forth herein.

52.    Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

53.    The product was in a dangerous and defective condition when introduced into the stream of commerce by the Defendants. The product was so defective that when used in its intended and reasonably foreseeable way, the potential risk of the product created a substantial danger to users of the product and could and would cause serious injuries. Specifically, the product had the potential to be dislodged from the steering wheel of automobiles during airbag deployment sending dangerous projectiles throughout the cabin of vehicles that would cause serious injuries to occupants.

54.    The potential for this risk was knowable in light of the scientific and automotive knowledge that was generally accepted in the automotive industry and scientific community at the time of sale. Specifically, that airbags deploy with significant force and putting items on an airbag compartment that were not permanently affixed or adequately secured could cause them to dislodge on airbag deployment and cause serious injuries.

55.    This potential risk presented a substantial danger when using the product as instructed and intended by Defendants.

56.    Ordinary consumers, including Plaintiff, would not recognize this potential danger and Plaintiff did not do so prior to her airbag deploying.

57.    Defendants failed to provide any warning of this risk.

58.    Plaintiff was harmed by the product when her airbag deployed. The lack of a warning was a substantial factor in causing her harm and damages. Had Plaintiff been warned of

Complaint

9

EX A

the risk of using the product, and the potential injuries that could result upon airbag deployment, she would not have used the product.

59.     At all times relevant, Defendants, and each of them, intentionally engaged in conduct which exposed the user of the product to a serious potential danger known to the Defendants which decision was based on their choice to advance their own monetary interest. As such, this conduct was an act in conscious disregard of the safety of persons such as Plaintiff, and presents the proper circumstances for the imposition of punitive and exemplary damages. Indeed, Defendants continue to manufacture, market, sell and distribute the dangerous product solely for monetary gain.

### FOURTH CAUSE OF ACTION
### NEGLIGENCE (PRODUCT LIABILITY)

60.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 59 as though fully set forth herein.

61.     Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

62.     Defendants owed duties of care to actual and potential customers and consumers with respect to the product. Such duties included but not were limited to: designing, formulating, manufacturing, distributing, marketing, selling and providing the product in a fashion that was safe to consumers; packaging the product safely so as to reasonably minimize the potential for injury; labeling the product so as to reasonably warn consumers of the potential for danger; and reasonably applying knowledge and information from past incidents, complaints, studies,

Complaint

10

EX A

observations, reports, experience, or investigation to provide for the safety of consumers with respect to the product.

63.    Defendants knew or should have known that if the product was not properly and carefully manufactured, designed, tested, inspected, delivered, warned, marketed and labeled prior to sale or distribution to consumers, it would, if used by any member of the general public be a substantial factor in causing serious and permanent injury.

64.    Defendants negligently and carelessly manufactured, designed, tested, inspected, distributed, introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use the product so that it was dangerous and defective and unsafe for the use and purpose for which it was intended and sold. In doing these things, Defendants failed to use the amount of care that a reasonably careful company or person would have used under similar circumstances to avoid exposing others to foreseeable risks of harm and injury.

65.    The dangers and condition of the product were known to Defendants or should have been discovered through the exercise of ordinary care and reasonable diligence but were not disclosed or made known to the purchasers or users of the product, including Plaintiff.

66.    At all times mentioned herein, purchasers or users of the product had no knowledge of the defective condition of the product or any dangers of using the product.

67.    In doing the above, the Defendants breached their duties owed to customer and consumers including Plaintiff.

68.    Plaintiff was seriously injured and suffered harm and damages as a direct and legal result of Defendants' breach of its duties owed.

69.    Defendants' breach and negligence was a substantial factor in causing harm to Plaintiff.

## FIFTH CAUSE OF ACTION
## NEGLIGENCE (FAILURE TO WARN)

70.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

EX A

71.    Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

72.    The product was in a dangerous and defective condition when introduced into the stream of commerce by the Defendants. The product was so defective that when used in its intended and reasonably foreseeable way, the potential risk of the product created a substantial danger to users of the product and could and would cause serious injuries. Specifically, the product had the potential to be dislodged from the steering wheel of automobiles during airbag deployment sending dangerous projectiles throughout the cabin of vehicles that would cause serious injuries to occupants.

73.    The dangers of the product were known to Defendants or should have been discovered through the exercise of ordinary care and reasonable diligence but were not disclosed or made known to the purchasers or users of the product, including Plaintiff.

74.    Defendants knew or reasonably should have known that the product presented a substantial danger when using the product as instructed and intended by Defendants.

75.    Defendants knew or reasonably should have known that an average consumer, including Plaintiff, would not realize or appreciate the danger inherent in the product. Indeed, Plaintiff did not know or appreciate the risk until after sustaining her injuries.

76.    Defendants had a duty to adequately warn consumers and users of the product of the risks and dangers associated with the product.

77.    Defendants failed to provide any warning of the risks and dangers associated with the product.

Complaint
12

EX A

78.    Reasonable entities and companies, similarly situated as Defendants, would have warned of the danger and risks associated with the product.

79.    Plaintiff was harmed by the product when her airbag deployed. The lack of a warning was a substantial factor in causing her harm and damages. Had Plaintiff been warned of the risk of using the product, and the potential injuries that could result upon airbag deployment, she would not have used the product.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE (FAILURE TO RECALL)

80.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 79 as though fully set forth herein.

81.    Defendants are the manufacturers or apparent manufacturers, designers, distributors, packagers, labelers, suppliers, marketers, advertisers, and or sellers of the product. Defendants introduced into interstate commerce, transported in interstate commerce, advertised, solicited, sold and recommended for use to the general public the product. Each Defendant received a direct financial benefit from its activities and sale of the product. Each Defendant was integral to the business enterprise such that Defendants' conduct was a substantial and/or necessary factor in bringing the product to the customer market and into the hands of Plaintiff. Each Defendant had control over, or a substantial ability to influence, the distribution, marketing and sale of the product.

82.    The product was in a dangerous and defective condition when introduced into the stream of commerce by the Defendants. The product was so defective that when used in its intended and reasonably foreseeable way, the potential risk of the product created a substantial danger to users of the product and could and would cause serious injuries. Specifically, the product had the potential to be dislodged from the steering wheel of automobiles during airbag deployment sending dangerous projectiles throughout the cabin of vehicles that would cause serious injuries to occupants.

///

///

Complaint
13

EX A

83. The dangers of the product were known to Defendants or should have been discovered through the exercise of ordinary care and reasonable diligence but were not disclosed or made known to the purchasers or users of the product, including Plaintiff.

84. Defendants knew or reasonably should have known that the product presented a substantial danger when using the product as instructed and intended by Defendants.

85. Defendants became aware of the defect and dangers of the product after it was sold. Specifically, Defendants learned that the product could dislodge during airbag deployment and cause serious injuries.

86. Defendants failed to recall the product or warn about this danger even after injuries were reported and the National Highway Traffic Safety Administration issued a consumer warning advising of the risks associated with the product.

87. Defendants continued, and continue, to sell the product.

88. Defendants had a duty to recall the product and warn consumers and users who had purchased the product. This includes notifying consumers and purchasers of the risk and dangers of the product and instructing those consumers and users to no longer use the product and to remove the product from any air bag compartments from which the product could become dislodged and cause serious injury.

89. Reasonable entities and companies, similarly situated as Defendants, would have recalled the product, warned purchasers and users of the product about the known injuries that the product caused, and instructed purchasers and users to stop using the product and to remove it from any airbag compartments from where the product could dislodge.

90. Defendants failed to do any of these things.

91. As a result, Plaintiff was harmed by the product when her airbag deployed. The failure to recall the product was a substantial factor in causing her harm and damages.

### DAMAGES

92. Plaintiff incorporates the preceding paragraphs by reference as though set forth here in their entirety. Defendants' conduct was a direct, proximate, producing and substantial cause of Plaintiff's injuries and damages, including damages in the past and future, including but

not limited to: pain and suffering, mental anguish, emotional distress, physical impairment, physical disfigurement, loss of enjoyment of life, medical expenses, lost earning capacity, punitive and/or exemplary damages and attorney's fees (to the extent permitted by law) and other general, special, ordinary, incidental and consequential damages as would be anticipated to arise under the circumstances. Upon information and belief, Defendants acted with malice, oppression and recklessly, knowing that substantial damage and injury would occur from the actions and inactions as alleged herein. Specifically, they acted with willful and knowing disregard for the rights and safety of the public, including Plaintiff, including but not limited to, allowing the product to continue to endanger users and consumers. Defendants had awareness of the probable dangerous consequences of their conduct and deliberately failed to avoid those consequences.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Cecilia Martinez, demands judgment in her favor as follows:

A.    For compensatory damages in an amount according to proof at trial;

B.    For punitive or exemplary damages in an amount sufficient to punish and deter;

C.    For an award of costs and interest pursuant to law;

D.    For attorney's fees to the extent permitted by law;

E.    For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims and issues so triable in this action.

Dated: _February 7, 2024___

PICCUTA LAW GROUP, LLP

___/s/ *Charles Tony Piccuta*___
Charles Tony Piccuta
Attorney for Plaintiff
Cecilia Martinez

---

Complaint
15

EX A

# EXHIBIT 1







# EXHIBIT 2



EX A

